## RAILROAD COMMISSION OF TEXAS et al.
## v. PRIMROSE PETROLEUM CO.
### No. 8300.

Court of Civil Appeals of Texas. Austin.
Feb. 16, 1935.

Wm. McCraw, Atty. Gen., and T. F. Morrow, Archie Gray, L. H. Engleking, Harry S. Pollard, and W. J. Holt, Asst. Attys. Gen., for appellants.

Upchurch & Hooper and Willis E. Gresham, all of Austin, for appellee.

McCLENDON, Chief Justice.

This case is companion to several others this day decided involving the December 5, 1934, order of the Railroad Commission relative to the conservation of petroleum oil, to the opinions in which cases reference is here made.

The suit was by Primrose Petroleum Company against the Railroad Commission and others to enjoin them from enforcing the rule as to certain designated products of crude petroleum oil situated in the East Texas oil field, and to enjoin certain common carriers from refusing to accept the products for shipment.

The appeal, which is by the Commission, is from a temporary injunction passed after notice and hearing.

The petition alleges, and the record shows, that appellee owned all the products in issue; that it purchased them December 1, 1934; that on December 20, 1934, it filed with the Commission a verified inventory, listing the products and giving the data regarding them required by the order; and that on January 9, 1935, it filed with the Commission verified tender, form SW—4.

Appellee introduced an affidavit of H. J. Strief, president of Union Refining Company, to the effect that the products were sold to appellee about December 1, 1934, and none of them "were procured from illegal, excess, or commonly referred to as 'hot' oil"; also an affidavit of C. M. Zink, traffic manager of Union Refining Company, that the products were "actually on hand in the possession of said Primrose Petroleum Company but actually on the premises of the Union Refining Company, and that said products are still at the same place they were on the 10th day of December, 1934." Appellant introduced affidavits of three employees of Union Refining Company to the effect that they ran hot oil from various wells into the refinery company's plant during the period from June to November, 1934. From figures given by these witnesses, the amount of such hot oil was estimated at several hundred thousand barrels. Appellants also introduced two witnesses who investigated the operations of the

Union Refining Company, employed one by the Commission and the other by the Department of the Interior, the substance of which was that the Union Refining Company acquired large quantities of crude oil and byproducts which they could not from records of the company or otherwise trace to legal oil as their source.

There was no attempt to show collusion between appellee and the Union Company, further than may be inferred from the above statement. There are some circumstances which might serve to arouse suspicion; but the record is insufficient to establish collusion, even prima facie. There is no evidence in the record showing any connection between the two concerns, nor that the sale to appellee was a mere subterfuge for the purpose of marketing the products of the Union Company, in evasion of the conservation laws of the state, or other than bona fide.

Appellee has shown a literal as well as substantial compliance with the Commission's order as interpreted by this court in other companion cases.

The theory upon which the Commission defended the action appears to have been that unless, from available records of the Commission and the tenderer, the tendered product could be traced into legal oil, it was prima facie processed from hot oil (a conclusion which appears logically sound, and one which for practical enforcement purposes is no doubt essential), and was therefore contraband into whosesoever hands it might pass. We have rejected this theory, as shown in the other cases, holding the product contraband only so long as it is in the hands of the original processor from the crude, or of one in collusion with him.

Under the record showing our holding requires an affirmance of the trial court's order. Since, however, the appeal is from a temporary injunction pending plenary trial upon the merits, and the effect of the temporary injunction is not to preserve the status quo [Alpha Petroleum Co. v. Com. (Tex. Civ. App.) 59 S.W.(2d) 374 (error dis.), R. R. Com. v. Real, 80 S.W.(2d) 494], but if prolonged to destroy the entire subject-matter of the suit, and since that subject-matter is the enforcement of the conservation laws of the state, we feel it our duty as an inferior tribunal to suspend the effect of our judgment until the Commission has had a reasonable opportunity to invoke the jurisdiction of the Supreme Court.

It is, therefore, our order:

The trial court's temporary injunctive order is affirmed, the temporary injunction heretofore granted by this court is extended, and the effect of this court's judgment of affirmance herein is suspended, pending action thereon by the Supreme Court; provided, however, that this suspension order and the temporary injunction granted by this court shall cease to be effective at 5 o'clock p. m., Thursday, February 21, 1935, if at that time appellants have not filed an application for writ of error to the Supreme Court.

Trial court's temporary injunction affirmed, temporary injunction of this court extended; and effect of judgment of affirmance suspended.